UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Juan Bautista Acero
Chuma</u>

       v.

<u>FCI Berlin, Acting
Warden et al.</u>

Civil No. 26-cv-159-LM-AJ
Opinion No. 2026 DNH 025 P

## **O R D E R**

Petitioner Juan Bautista Acero Chuma ("Acero") brings this petition under 28 U.S.C. § 2241, alleging that his detention in connection with his removal proceedings is unlawful. Specifically, he contends that the Immigration Judge ("IJ") who conducted his bond hearing violated his due process rights by failing to apply the constitutionally mandated burden of proof to justify an order of detention under 8 U.S.C. § 1226(a). See Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). The government objects. Doc. no. 4. For the reasons that follow, and given the highly circumscribed standard of review that this court is bound to apply in evaluating Acero's claim, the court must deny his petition.

## STANDARD OF REVIEW

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

### BACKGROUND[1]

Acero unlawfully entered the United States in 2002. He was not apprehended or encountered at the border. At some point, he began living in the Lowell, Massachusetts area, where he has children, family, and friends. He also has regular employment as a subcontractor and a stable residence.

Acero has a criminal record. He has been charged at least five times with driving without a license or on a suspended license. See doc. no. 1-6 at 25-26. He has missed multiple court dates in connection with these offenses, and has had bench warrants issued as a result. Id. at 25. One of these driving charges resulted in a sentence of probation. Acero was twice found to have violated the terms of that probation. Acero has also been charged with assault and battery. He missed a court date in connection with that charge as well. Finally, Acero was charged with disturbing the peace after allegedly refusing an officer's instruction to end a noisy party at his residence in the early morning hours.

Immigration authorities first encountered Acero on October 9, 2012. After he was stopped by the New Hampshire State Police for driving-related reasons and failed to produce documents confirming his identity, the police contacted Immigration and Customs Enforcement ("ICE") for assistance. ICE responded and

---

[1] The following facts are drawn from Acero's petition and the attachments thereto, as well as the IJ's written memorandum of decision. See doc. nos. 1 through 1-6; doc. no. 4-1. All facts recited herein were available to the IJ at the time of the bond hearing. See doc. nos. 1-4 through 1-6; doc. no. 4-1 at 2. They are framed in the light most favorable to the IJ's decision. Cf. United States v. Torres Monje, 989 F.3d 25, 27 (1st Cir. 2021) (explaining that, on a challenge to the legal sufficiency of the evidence to support a criminal conviction, the court reviews the evidence in the light most favorable to the verdict).

learned from Acero that he had unlawfully entered the country and that he claimed no right to lawfully remain in the United States. ICE therefore arrested Acero and placed him in removal proceedings. That same month, an IJ released Acero on bond.[2]

For reasons that are not clear, Acero's removal proceedings did not conclude until August of 2024. That month, an IJ issued an order finding Acero inadmissible and therefore ordered him removed. The IJ also denied Acero's request for cancellation of removal as well as his request for voluntary departure from the United States. Acero has appealed the removal order to the Board of Immigration Appeals ("BIA"). That appeal remains pending.

At some point after filing his appeal to the BIA, ICE took Acero into custody.[3] In December 2025, Acero requested and received a bond hearing before an IJ at which the IJ considered his release under § 1226(a). After weighing Acero's length of residence in the United States, his ties to the community, and several letters of support attesting to his good character, the IJ found based on Acero's criminal record and his order of removal that his release posed a risk of flight that no amount of bond or alternative to detention could sufficiently mitigate. Therefore, the IJ denied Acero's request for release on bond.

---

[2] Acero accrued several of the aforementioned criminal charges while released on this bond.

[3] The date of Acero's incarceration is unclear from the materials submitted by the parties to this court.

## DISCUSSION

A noncitizen who is "in the country" may be detained during the pendency of removal proceedings pursuant to 8 U.S.C. § 1226.[4] Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Unless ineligible for release under § 1226(c), the Department of Homeland Security ("DHS") has authority to release noncitizens facing removal proceedings on "bond of at least $1,500" or "conditional parole." 8 U.S.C. § 1226(a)(2); see id. § 1226(c) (requiring detention for noncitizens that have committed specified criminal offenses). Alternatively, DHS may elect to detain the noncitizen pending the outcome of removal proceedings. Id. § 1226(a).

An ICE officer "makes the initial detention determination for noncitizens subject to detention under section 1226(a)." Hernandez-Lara, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226's implementing regulations provide that, if the noncitizen disagrees with the officer's detention decision, he may appeal that decision to an IJ, who may then "exercise the authority" in § 1226(a) to detain or release the noncitizen "and determine the amount of bond, if any, under which the [noncitizen] may be released." 8 C.F.R. § 236.1(d)(1). Either party may appeal the IJ's bond determination to the BIA. Id. § 236.1(d)(3). But the BIA's ruling may not be further appealed to the relevant court of appeals. Romero v. Hyde, 795 F. Supp. 3d 271, 278 (D. Mass. 2025). Instead, a petition for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may

---

[4] Because his removal order is not yet final, Acero is not currently subject to post-final-order detention under 8 U.S.C. § 1231(a).

4

seek judicial review of an IJ's bond decision.[5] Gudiel Polanco v. Garland, 839 F.

App'x 804, 805 (4th Cir. 2021) (per curiam); Ben Halim v. Ashcroft, 107 F. App'x 1, 6

(7th Cir. 2004); see also Fed. R. App. P. 22(a) ("An application for a writ of habeas

corpus must be made to the appropriate district court.").

"Section 1226(a) is silent as to what burden of proof applies in bond hearings

and who bears that burden." Hernandez-Lara, 10 F.4th at 26. In Hernandez-Lara,

the First Circuit held that, to detain a noncitizen under § 1226(a), "due process

requires the government to either (1) prove by clear and convincing evidence that

[the noncitizen] poses a danger to the community or (2) prove by a preponderance of

the evidence that [the noncitizen] poses a flight risk." Id. at 41.

Although 8 U.S.C. § 1226(e) bars judicial review of an IJ's "discretionary

judgment regarding the application of this section," this court and many others

have recognized that IJs do not have discretion to fail to apply the burden of proof

that due process requires. Mayancela Mayancela v. FCI Berlin, Warden, Civ. No.

25-cv-348-LM-TSM, 2025 WL 3215638, at *5 (D.N.H. Nov. 18, 2025); see, e.g., Diaz-

Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020); Rubio-Suarez v.

Hodgson, Civ. No. 20-10491-PBS, 2020 WL 1905326, at *2-3 (D. Mass. Apr. 17,

2020); see also Ozturk v. Trump, 777 F. Supp. 3d 26, 34 n.1 (D. Mass. 2025) ("[T]he

First Circuit has held that § 1226(e) does not strip district courts' ability to review

habeas petitions challenging the constitutionality of a petitioner's detention." (citing

---

[5] If the district court denies the noncitizen's habeas petition, the noncitizen
may then appeal that denial to the relevant court of appeals. Fed. R. App. P. 22(a).

Hernandez-Lara, 10 F.4th at 33-34)). Thus, a claim that an IJ violated a noncitizen's due process rights by failing to apply the constitutionally mandated burden of proof set forth in Hernandez-Lara is cognizable in a habeas petition despite § 1226(e). Mayancela, 2025 WL 3215638, at *5.

However, while this court has authority to consider such a claim, that authority is "limited." Diaz Ortiz v. Smith, 383 F. Supp. 3d 140, 143 (D. Mass. 2019). To obtain habeas relief, Acero must show that the IJ "failed to place the burden of proof on the Government" to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. Id. To make this showing, Acero can either (1) demonstrate that the evidence adduced at the bond hearing was insufficient as a matter of law for a reasonable IJ to find flight risk by a preponderance of the evidence or (2) point to the language of the IJ's opinion to show that the IJ simply relied on an incorrect legal standard. Id.; accord, e.g., Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020); Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019).

Acero fails to demonstrate that the IJ who oversaw his December 2025 bond hearing applied an incorrect burden of proof. The IJ's memorandum of decision shows that, at the time of the bond hearing, she understood she had discretion to order Acero's release pursuant to § 1226(a). See doc. no. 4-1 at 2-3 & n.2.[6] The IJ

---

[6] After the bond hearing and based upon further review, the IJ found in her memorandum of decision that she should have held at the December 2025 hearing

6

also recognized that, to deny bond, the government "must prove by clear and convincing evidence that the [noncitizen] poses a danger to the community or prove by a preponderance of the evidence that the [noncitizen] poses a risk of flight." Id. at 2 (citing Hernandez-Lara, 10 F.4th at 41). She also noted factors typically significant in determining dangerousness and flight risk, such as the person's ties to the community, employment history, criminal record, and any history of flight or past failures to appear for court proceedings. Thus, this is not a circumstance in which it is "clear from the [IJ's] opinion itself that [she] simply did not apply the correct standard to the facts."[7] Massingue, 2020 WL 1866255, at *4 (quoting Hechavarria, 358 F. Supp. 3d at 240).

---

that she lacked jurisdiction to consider Acero's release pursuant to the BIA's decision in In re Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). See doc. no. 4-1 at 3 n.2. However, her memorandum of decision memorializing her findings from the December 2025 hearing makes clear that, at the time of the hearing, she understood she had authority to release Acero under § 1226(a) if she found that the government failed to demonstrate that Acero's release would pose a risk of flight or danger to the community. See id. at 2-3. Her memorandum also shows that she denied Acero bond at the December 2025 hearing because she found that the government had demonstrated by a preponderance of the evidence that Acero posed a flight risk, not because she lacked jurisdiction to release him. Thus, the IJ's memorandum of decision does not show that she relied upon an incorrect legal standard at the December 2025 hearing.

[7] Acero suggests in his habeas petition that the IJ may have required him to disprove flight risk, rather than requiring the government to affirmatively prove flight risk. The court does not understand Acero to argue that the IJ did, in fact, place the burden of proof on him instead of the government. See doc. no. 1 at 6 (habeas petition) ("To the extent the [IJ] placed the burden on Petitioner to demonstrate that he is not a flight risk, rather than requiring [the government] to prove that he is, the hearing violated the Due Process Clause as interpreted in Hernandez-Lara . . . ."); id. at 6-7 ("If the [IJ] required Petitioner to disprove flight risk or failed to clearly require [the government] to carry its burden, the resulting detention violates the Fifth

Moreover, based on the totality of the evidence before the IJ, a reasonable jurist could have concluded by a preponderance of the evidence that Mayancela posed a flight risk. As the IJ recognized, significant considerations in evaluating flight risk include prior instances of missed court dates and a noncitizen's criminal record. The IJ had evidence before her that Acero had been charged at least five times with driving without a license or on a suspended license, and that he had missed several court dates in connection with those charges. One of those charges resulted in a sentence of probation, and a judicial officer twice found that Acero violated the terms of his probation. The IJ also had evidence that Acero had been charged with an assault, and that he also was charged with disturbing the peace after allegedly refusing to comply with an officer's lawful demands. Acero accrued several of these criminal charges and failures to appear after being released on bond by an IJ in October 2012. In short, the evidence adduced at the December 2025 bond hearing permitted a reasonable IJ to conclude by a preponderance of the evidence that Acero has a history of failing to appear for court proceedings and "non-compliance with the laws of the United States." Doc. no. 4-1 at 4.

In addition to his criminal record, the IJ highlighted that Acero was subject to an order of removal. Although the IJ did not explicitly state the significance of the removal order, the court draws the reasonable inference that the IJ concluded that Acero had an incentive not to appear for future proceedings at which his

---

Amendment."). To the extent Acero intended to so argue, the court disagrees with that argument given the evidence discussed above that the IJ understood the allocation of the burden of proof required by Hernandez-Lara.

removal order could be effectuated or upheld. See Mayancela, 2025 WL 3215638, at *6; cf. López-Gómez v. Bondi, 154 F.4th 1, 4 (1st Cir. 2025) ("[T]he BIA need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record . . . .").

To be sure, Acero presented substantial evidence that his release would pose little flight risk.[8] He presented evidence that he has two U.S.-citizen children, whom he financially supports and sees regularly. He also presented evidence that he has a stable career and residence, and that he is well-regarded by his employers and landlord. Numerous family members, friends, and community members authored letters of support attesting to Acero's outstanding character. And, while Acero had prior failures to appear for criminal proceedings, there was no evidence that Acero had ever failed to appear for a hearing in connection with his removal proceedings. Finally, Acero provided evidence of his financial means and willingness to pay a bond, as well as a letter from a bond sponsor who pledged to ensure that Acero attended all hearings in connection with his removal proceedings.

The question before this court is not whether it would have ordered Acero's release on bond had it been in the IJ's position to apply Hernandez-Lara in the first

---

[8] Acero asserts that the IJ failed to consider this evidence. The IJ's memorandum of decision does not support this assertion. Her memorandum of decision explicitly acknowledged and discussed Acero's evidence, noting that he "does have a length of residence in the United States, he has a fixed address, and he has family ties, including U.S. Citizen children," as well as "several letters of support attesting to his character." Doc. no. 4-1 at 4. The IJ further explained in her memorandum that she "weighed this" evidence against his criminal record and his order of removal, and ultimately found that the government "met its burden to show by a preponderance of the evidence that [Acero] poses a flight risk." Id.

instance. Rather, the court may only consider whether the evidence submitted at the bond hearing was insufficient as a matter of law to find flight risk by a preponderance of the evidence. Although there was substantial evidence before the IJ that Acero's release posed little flight risk (or at least that any flight risk could have been sufficiently mitigated by a meaningful bond amount or conditions of release), there was also legally sufficient evidence to draw the contrary conclusion. Because a reasonable jurist could have found, based on Acero's criminal record, history of failure to appear for criminal proceedings, and his order of removal, that his release posed an unacceptable risk of flight by a preponderance of the evidence, the court is compelled to find that the IJ's determination did not violate Acero's due process rights.[9]

---

[9] Acero also asserts that, regardless of whether the IJ applied the required burden of proof, her flight risk finding is simply erroneous. The government argues that the court lacks jurisdiction to consider this claim pursuant to § 1226(e). Acero responds that, in light of the Supreme Court's decision in Wilkinson v. Garland, 601 U.S. 209 (2024), the court does have jurisdiction to consider his claim and that the court should evaluate the IJ's finding under an abuse-of-discretion standard of review. However, Acero cites no authority in support of his contention that abuse-of-discretion is the standard of review applicable to the IJ's finding. This is despite the court's endorsed order directing the parties to brief the applicable standard of review. See Endorsed Order of Mar. 11, 2026. The court finds that, even assuming it has jurisdiction to consider a claim that the IJ erred in finding a flight risk regardless of whether she applied the correct burden of proof, Acero has failed to demonstrate that the standard of review applicable to such a claim is meaningfully different from the standard of review applicable to his due process claim. Accordingly, the court rejects Acero's Wilkinson claim for the same reason it rejects his due process claim.

## CONCLUSION

Acero's petition (doc. no. 1) is denied. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 25, 2026

cc:     Counsel of Record

11